**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SHERRY SHELBY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:16-CV-1549 |
| VS. | § | |
| | § | |
| BOXER PROPERTY MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending in this Fair Labor Standards Act ("FLSA") collective action are several motions. Relevant to this Order, Plaintiffs have filed a Motion for Partial Summary Judgment on the issue of the "outside sales" exemption defense, and Defendant Boxer Properties has filed a Motion for Complete Summary Judgment. Based on careful consideration of the filings, applicable law, and oral argument, the Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion.

## I. BACKGROUND

Plaintiffs were employed by Defendant Boxer Property Management Corporation ("Boxer") as leasing agents. (Doc. No. 83 at 1.) Plaintiffs argue that they were denied overtime pay in violation of the FLSA. One of Defendant's primary defenses is that Plaintiffs are "outside salespeople" to whom the FLSA does not apply.

Defendant is engaged by commercial building owners to lease their office and retail spaces, as well as to maintain the buildings housing the office space they manage. *Id.* at 1, 6. Defendant typically contracts with the building owner to provide property managers, maintenance, cleaning, and repairs through third-party vendors. *Id.* at 6-7. When showing space

1

to a prospective client, leasing agents were required by Boxer to highlight Boxer's involvement with the property and to reinforce the benefits of leasing a Boxer-managed property. (Doc. No. 87 at 6.)

Defendant does not own the buildings or office spaces it leases. (Doc. No. 83 at 5-6.) Defendant has two primary headquarters, its corporate offices in Houston and Dallas, but leasing representatives rarely visit these corporate offices. *Id.* Instead, Plaintiffs used leasing offices located in the commercial buildings managed by Boxer. (Doc. No. 87 at 7.) These leasing offices were Plaintiffs' sole base of operations and contained the normal office furniture, various leasing forms and materials, and had cameras directed towards the individual leasing agent's desk, chair, and the chairs used by customers to sit across from the leasing representative. *Id.* at 7-9. Each leasing agent typically had a portfolio of between one and five buildings that it was his or her responsibility to lease and oversee, with their leasing office located in one of the buildings. (Doc. No. 83 at 7.) Plaintiffs typically did not work in the same building as their supervisors, who worked out of corporate headquarters. *Id.* at 6. Although not physically present, supervisors used "mystery shoppers" who would pose as potential lessees as a means of quality control to ensure that agents followed the Boxer-approved procedures when going through the rental process. (Doc. No. 89 at 7.)

Boxer's handbook specifies that leasing agents are required to work out of these offices and are required to arrive at work at 8:30 AM and allowed to depart at 5:30 PM. (Doc. No. 87 at 4). However, the handbook also states that these "times are subject to prospect requirements and scheduled appointments, and important unexpected tasks take precedent over regular schedules." *Id.* In addition, leasing agents are "expected to answer their cell phones or reply to other leasing communications after regular business hours." *Id.* Onsite leasing agents were also responsible for

handling the majority of the paperwork associated with securing a lease. (Doc. No. 89 at 11.) Defendant prohibited agents from taking files out of the office, requiring paperwork be done at the agent's leasing office. *Id.*

At least one material fact issue is in contention between the parties. Plaintiffs claim that the cameras mounted in the leasing offices were used by their supervisors to monitor whether the representative was present in the office or not. (Doc. No. 87 at 23.) Boxer disputes this contention and argues that the cameras were not reviewed by supervisors to determine whether an agent was present, but instead were livestreamed to Boxer's call center so that the call center could determine where to route calls that came in. (Doc. No. 103 at 27-28.) Defendant claims that this system was in place merely to ensure that meetings were not interrupted by calls and to allow the center to know whether to transfer a call to the representative's cellphone or to their office phone. *Id.* At oral argument, Defendant's counsel assured the Court that the cameras are "used typically by the call center that receives calls from prospects." Hr'g Tr., 7:14-8:17, Nov. 20, 2018.

However, despite Boxer's claims, at least one opt-in plaintiff's personnel file includes a direct comment by a supervisor referencing the use of the cameras to monitor an agent's presence in the office. (Doc. No. 111 at 9-10.) In one email, a leasing agent's supervisor described the process she used to determine the individual's whereabouts. *Id.; see also* Ex. 89-12. She described that process as follows: "At 4:45 I logged into the cameras on Boxer Central and both Rodney's offices . . . were empty with the lights out and computers inactive. . . . I then tried calling Rodney several times 5:05PM, 5:11 and 5:15 PM with no response. I then sent him an email (enclosed) at 5:11 to which I also never received a response. At 5:15 I checked Lync and it showed Rodney had been away for an hour." Plaintiffs thus provide evidence that

supervisors in fact were able to check cameras and used absence on camera as part of the basis for discipline. This evidence contradicts Defendant's position, which is supported only by Defendant's own assertion, and thus the Court finds that there is not a genuine dispute of fact as to whether cameras were used to supervise leasing agents remotely.

## II. APPLICABLE LAW

### a. Legal Standard

On a motion for summary judgment, a reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001).

Some general principles guide the analysis of FLSA claims. The evaluation of a FLSA claim is typically fact-intensive and dependent on the employee's duties and responsibilities. The burden is on the employer to establish that an employee is covered by a FLSA exemption. *Heidtman v. Cnty of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999). Despite the fact-bound nature of the determination that an employee is exempt from FLSA's overtime compensation requirements, the Fifth Circuit has held that it is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).

Recent Supreme Court decisions have changed the approach that district courts should take in interpreting FLSA's exemptions. Previously, courts had chosen to construe FLSA's exemptions narrowly because it is a remedial statute. *See, e.g., Freeman v. Kaplan, Inc.*, 132 F. Supp. 3d 1002, 1007 (N.D. Ill. 2015). Earlier this year, the Supreme Court held that FLSA exemptions should be given a "fair interpretation," as opposed to the previous narrow construal.

*Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018).

### b. "Outside Sales" Exemption

The FLSA requires that employers pay overtime wages when employees work more than forty hours per week. 29 U.S.C. § 207(a)(1)(2018). However, the statute contains exemptions for certain types of employees, including those employed "in the capacity of outside sales[person]." *Id.* § 213(a)(1). The question of whether the outside sales exemption applies, while influenced by the factual question of how an employee spends her time, is a question of law. *Nielsen v. DeVry, Inc.*, 302 F. Supp. 2d 747, 752 (W.D. Mich. 2003) (citations omitted) ("The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law.")

In *Christopher v. Smith Kline Beecham Corp.*, the Supreme Court described the rationales for exempting outside sales employees from overtime provisions:

> The exemption is premised on the belief that exempt employees "typically earned salaries well above the minimum wage and enjoyed other benefits that set them apart from the nonexempt workers entitled to overtime pay." It was also thought that exempt employees performed a kind of work that "was difficult to standardize to any time frame and could not be easily spread to other workers. . ."

567 U.S. 142, 165 (2012) (quoting 69 Fed. Reg. 22160–22163); *see also Jewel Tea Co. v. Williams*, 118 F.2d 202, 207–08 (10th Cir. 1941) ("There are no restrictions respecting the time [an outside salesperson] shall work. . . . In lieu of overtime, he ordinarily receives commissions . . . [He] is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day.")

The statute establishing the outside sales exemption does not provide further guidance as

to the definition of "outside salesperson," but the Department of Labor ("DOL") has promulgated regulations which courts have turned to for further guidance. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. at 161. The DOL's regulations define an outside salesperson as an employee whose primary duty is "making sales" and who is "customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500 (2019). An "employer's place of business" is defined by the DOL as "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales . . . even if the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502 (2019).

The paradigmatic examples of locations that constitute "away" from an employer's place of business are a customer's place of business or an employee's home. *See Lipnicki v. Meritage Homes Corp.*, 2014 WL 923524, at *3 (S.D. Tex. Feb. 13, 2014) (stating that classic examples of outside sales people include "a traveling salesman like Willie Loman, a door-to-door saleswoman like the 'Avon Lady,' and a real estate agent who spends much of her time showing homes in various areas at times she schedules"). However, courts do not read these examples restrictively, holding that "the regulations do not require qualifying 'outside sales' to take place solely at the client's home or place of business . . ." *Hall v. Haworth, Inc.*, 2014 WL 12537074, at *4 (S.D. Tex. May 2, 2014), *report and recommendation adopted*, 2014 WL 12539249 (S.D. Tex. May 2, 2014).

In addition to promulgating regulations, the DOL releases opinion letters to which courts look in order to supplement the case law on the definition of "outside salesperson." *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (applying *Skidmore* deference to a DOL opinion letter interpreting a FLSA provision but ultimately finding it unpersuasive). These letters

are informative, but not binding on courts' decisions. *Id.*; *see also Lipnicki v. Meritage Homes Corp.*, 2014 WL 923524, at *3-4 (discussing the weight courts give to DOL opinion letters). The letters relevant to the case before this Court cover three different contexts: apartment rental agents, home salespeople, and resort timeshare salespeople.

First, in 1971, the DOL issued a letter discussing the outside sales exemption as it applies to rental agents in an apartment complex. The apartment complex was comprised of a leasing office and thirty-four buildings owned and operated by one entity. U.S. Dep't of Labor, Wage and Hour Div., Op. Letter, 1971 WL 33087 (Dec. 21, 1971). Rental agents worked out of a rental office located on the premises of the community and performed duties associated with leasing and cultivating prospective tenants. *Id.* The DOL wrote that the employee in this case could not be considered an outside salesperson, because the agent "is employed in an apartment community which is maintained on a permanent basis as a location of his employer staffed with the necessary personnel for renting, maintaining required records and cleaning and repairing the facilities as part of his employer's business operations." *Id.* Thus, in coming to its conclusion, the DOL appears to have considered the "permanent basis" of the location, the presence of the employer's business records, and the maintenance of the facilities by the employer.

In 2007, the DOL issued two opinion letters discussing the outside sales exemption in the context of home salespeople. *See* U.S. Dep't of Labor, Wage and Hour Div., Op. Letter, 2007 WL 506574 (Jan. 25, 2007); U.S. Dep't of Labor, Wage and Hour Div., Op. Letter, 2007 WL 506575 (Jan. 25, 2007). In these letters, the DOL determined that time spent on lots where the homes are built constitutes "outside" time that qualifies an employee for the outside sales exemption. 2007 WL 506574, at *5; 2007 WL 506575, at *3. The DOL wrote that "leaving the sales office to show properties, even properties located within the same subdivision [as the sales

7

office], satisfies the requirement that sales associates be engaged away from their employer's place of business." 2007 WL 506574, at *4. The letters also described the DOL's longstanding view that "the lots for sale are not part of the employer's place of business, but rather are the products to be sold by the sales associates." *Id.* In *Lipnicki v. Meritage Homes Corp.*, a Southern District of Texas court deferred to the DOL's interpretation of the exemption's requirements as it applies to model home salespeople in its 2007 opinion letters. 2014 WL 923524, at *8. The court found the letters to be applicable but held that factual issues were in dispute such that neither side was entitled to summary judgment on the outside sales exemption. *Id.*

The final relevant DOL letter focuses on sales agents who worked at a resort that sells timeshares. U.S. Dep't of Labor, Wage and Hour Div., Op. Letter, 2007 WL 506577 (Jan. 25, 2007). The DOL wrote that the outside sales exemption did not apply to these employees who travelled between an offsite sales office and the resort, showing prospective renters around various locations within the resort. *Id.* The exemption did not apply to these agents, because even though they performed sales duties and were outside the rental office for a sufficient amount of time, for the purposes of FLSA, the entire resort constituted the employer's place of business. *Id.* Here again, the continuing business interest the employer maintained in a unit even after a sale was a relevant factor in the DOL's determination that the outside sales exemption did not apply.

III.    ANALYSIS

The parties agree that Plaintiffs' primary duties are sales. They also seem to agree that the amount of time that Plaintiffs are outside of the leasing office is sufficient to qualify for the exemption. Their dispute is thus centered on whether properties in the commercial buildings they manage constitute Boxer's "place of business."

Because the outside sales exemption is an affirmative defense, Defendant bears the

8

burden of demonstrating its applicability. In some ways, Boxer's employees look very much like outside salespeople. They spend most of their time engaged in sales or sales-related business. Their primary work locations are the staged offices in the buildings Boxer maintains, far from their supervisors who work primarily out of Boxer's corporate headquarters in Houston and Dallas. They are required to be available to clients at all times via their cellphones, in addition to their daily work hours. Leasing agents are frequently out of their primary offices giving tours of the various office spaces available for lease, as well as making rounds to monitor the cleanliness of common spaces.

The leasing agents in this case are more similar to apartment rental agents or resort sales agents than model home sales agents. The sale of a model home removes responsibility for maintenance of the home from the company selling it. The model home sales agents in the DOL letters also did not appear to have mandatory hours, and there was no indication that agents were spot checked via the use of cameras or mystery shoppers.

Like Plaintiffs in this case, agents in the apartment and resort timeshare contexts were part of a business that operated and maintained the buildings and grounds of the property. Unlike the entities in those cases, Defendant here does not own the actual properties where it does its business. However, both existing case law and DOL letters indicate that ownership of a location is not necessary for it to constitute an employer's place of business. While this difference weakens Plaintiffs' arguments, it does not defeat them where applying the outside sales exemption to Plaintiffs would not satisfy the rationales of the exemption.

Although Plaintiffs worked far from their supervisors, they were monitored via the use of cameras, spot checks, and communication via telephone and email. In addition to being monitored, Plaintiffs had mandatory hours that they were required to work, and when they failed

9

to be available during those hours, they were subject to discipline by their supervisors. Although Defendant claims that it did not and could not monitor Plaintiffs' work hours, the clear evidence indicates that supervisors used these cameras to monitor Plaintiffs. In addition, Defendant's demonstrated history of disciplining Plaintiffs based on their absence from the office controverts the rationale for the outside sales exemption that supervisors cannot easily monitor employees' work. Using the currently available technology, Defendant's supervisors did not need to be physically present to monitor whether Plaintiffs were working or at their desk.

Plaintiffs also contend that Boxer has a continuing business interest in the properties it manages but does not own. Boxer has no proprietary interest in the buildings where it leases properties; however, in addition to providing leasing and rental services to the buildings, Boxer also acts as a building manager, contracting on behalf of the properties with third-party vendors for services such as cleaning and repairs. Tenants typically contact Boxer, rather than the building owner, when they have a maintenance or cleanliness issue with their leased space or building common areas. In addition, Boxer stresses to potential tenants that the property is managed by Boxer, showing that the company portrays itself as taking a continuing interest in the building to potential buyers. Defendant's own representations to potential clients reinforce that its interest in the buildings, while not proprietary, extends past the sale phase.

## IV.    CONCLUSION

Plaintiffs are not subject to the outside sales exemption. Thus, Defendant's Motion for Complete Summary Judgment is hereby **DENIED**. Plaintiffs' Motion for Summary Judgment on the Outside Sales Exemption is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 11ᵗʰ day of January, 2019.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE