# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **SHERRY SHELBY, individually and on behalf of all others similarly situated** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 4:16−cv−01549** |
| **v.** | § § § | |
| **BOXER PROPERTY MANAGEMENT CORPORATION,** | § § § | |
| **Defendant.** | § § | |

## DEFENDANT'S MOTION FOR ATTORNEY'S FEES

This case is a collective action brought under the Fair Labor Standards Act ("FLSA"). Sherry Shelby ("Shelby"), the named-plaintiff and sole representative plaintiff, sued her former employer, Boxer Property Management Corporation ("BPMC"), alleging that BPMC misclassified her and others employed in the position of Leasing Representative as exempt from the FLSA's overtime requirements.

Shelby sought overtime wages for herself and the collective class. Plaintiffs first provided a purported computation of damages on March 8, 2019, about a month before trial.[1] There, for the first time, Plaintiffs provided "computations" for Shelby and each individual

---

[1] This matter commenced on June 1, 2016. Doc. 1. As described below, Shelby served Initial Disclosures pursuant to Federal Rule of Civil Procedure 26 on October 10, 2016. She did not provide a computation of damages, but rather, simply recited the types of damages available under the FLSA. *See* Doc. 151, Exh. A. Shelby did not amend or supplement this disclosure until November 13, 2018, about two months after the close of discovery and a month prior to the initial trial setting. It was not until March 8, 2019, however, that Shelby first provided individualized calculations in the form of Supplemental & Amended Disclosures. These same, individualized calculations were submitted by Shelby with the Joint Pretrial Order as the Plaintiffs' damages model governing trial. *See* Docs. 121 & 124.

FP 36811390.7

opt-in Plaintiff.  Specifically, Plaintiffs presented as their damages theory and as the specific calculations they expected to prove at trial the following: Shelby's calculations were that she worked 70 hours "on average" *every single week* within her relevant limitations period, and each opt-in Plaintiff's calculations were that they worked 60 hours "on average" *every single week* within their respective, relevant limitations periods.

Plaintiffs then pursued the theory presented in their March 8, 2019 disclosure during an eight-day bench trial.  Because of the nature of FLSA wage claims, the allegations were not presented as theoretical or hypothetical.  Rather, Shelby testified that, as a matter of claimed fact, she and the other plaintiffs truly worked the number of hours stated for each workweek, thereby entitling them to the specific amounts of allegedly-unpaid wages they had calculated as their damages for each such workweek.  During testimony, Plaintiffs acknowledged that it would be improper to ask the Court to award damages for hours not truly worked.[2]

Shelby, however, failed during trial to submit definite and certain evidence that she or others performed work for which they were not compensated, relying only upon speculative, unsubstantiated, and often-contradicted testimony.  Further, in its defense, BPMC provided substantial evidence negating Plaintiffs' allegations.  Then, literally, *in the final five minutes of the eight-day trial*, after re-calling Shelby to testify in rebuttal of BPMC's defense, Plaintiffs attempted to present a new damages "computation" – a damages model not previously articulated by Shelby or any Plaintiff that lessened the recovery claimed for Shelby and for each opt-in-Plaintiff based on a proposed formula different from the Supplemental & Amended Disclosures and the Joint Pretrial Order.  BPMC objected to the introduction of a new damages model, and Plaintiffs offered

---

[2] During the second day of trial, the Parties agreed to proceed to mediation at the Court's recommendation.  Defendant negotiated in good faith but the 70/60 damages model remained intact.

to withdraw the modified damages calculation, declining to inquire or press further in support of its admission after BPMC asserted its objection to a new model.

Over two months after the trial's conclusion, on July 18, 2019, Plaintiffs filed their post-trial, Amended Findings of Fact & Conclusions of Law. There, without any explanation, Plaintiffs materially modified their damages theory and computations. *See* Doc. 148, Exh. A. This modified, unsupported computation lacked basis and directly contradicted the computation provided before and during trial and, more importantly, the factual allegations made before the Court under oath.

On September 13, 2019, the Court issued Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a)(1). The Court made various findings and conclusions that ultimately resulted in a holding on the merits favoring BPMC and the dismissal of Plaintiffs' claims in their entirety. Ultimately, the Court found that it "cannot reasonably rely on Plaintiffs' clearly erroneous, now disavowed, original damages model" nor "can it rely on Plaintiffs' post-trial damages model, never before disclosed to either Defendant or the Court, which directly contradicts Plaintiffs' testimony made in support of their original model." Doc. 154, p. 16.

Further, in considering the post-trial damages model, the Court held that Plaintiffs had violated Federal Rule of Civil Procedure 26, regarding discovery and mandatory disclosures. Under Rule 26, "a party must, without awaiting a discovery request, provide…a computation of each category of damages …[and] the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Rule 26(a)(1)(A)(iii), FED.R.CIV.P. As to the violation, relying upon Federal Rule of Civil Procedure 37, the Court found "as a matter of law that there is no substantial justification for

Plaintiffs' discovery violations, the violations are not harmless, and they were committed in bad faith."[3]  Doc. 154, p. 16.

Rule 37 was "adopted in 1993 to give teeth to a significantly broadened duty to comply with case management orders and Rule 26's disclosure requirements."  *In re Enron Corp. Sec., Derivatives & "ERISA" Litig.,* 2007 WL 5023541, at *1 (S.D.Tex. Feb. 1, 2007).  In part, Rule 37(c) forbids the use at trial of any information required to be disclosed by Rule 26(a) that was not properly disclosed.[4]  Further, Rule 37(c)(1) states, "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard…may order payment of the reasonable expenses, including attorney's fees…."  Rule 37(c)(1)(A), FED.R.CIV.P.

Here, based on the Plaintiffs' violation of Rule 26 and the egregious nature of their bad-faith conduct, the Court should award BPMC its attorney's fees caused by the Rule 26 violation, including the resulting necessity imposed on BPMC to defend shifting, undisclosed – and admittedly false – damages theories during an eight-day bench trial and to reasonably defend against such shifting damages through necessary post-trial motions.

---

[3] Rule 37 excuses a Rule 26 violation if there exists substantial justification for the failure to disclose or if the failure to disclose was harmless.  Rule 37(c)(1), FED.R.CIV.P.; *Flores v. AT&T Corp.,* 2019 WL 2746774, at *2 (W.D. Tex. Mar. 27, 2019) (stating, "Moreover, the party facing sanctions under Rule 37(c) has the burden of demonstrating that a violation of Rule 26 was substantially justified or is harmless."); *Brown v. AT & T Services Inc*., 236 F. Supp. 3d 1000, 1005 (S.D. Tex. 2017) (stating, "Failure to provide information required under Rule 26(a) prohibits a party from using that information to supply evidence on a motion, unless the failure is substantially justified or harmless.").

[4] Rule 37(c), Failure to Disclose, to Supplement an Earlier Response, or to Admit, (1) *Failure to Disclose or Supplement.*  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

## I. BACKGROUND

**A.     DEFENDANT'S MOTION TO EXCLUDE EVIDENCE OF DAMAGES AND DISMISS.**

As noted above, Plaintiffs first provided a purported computation of damages on March 8, 2019, about a month before trial.  BPMC subsequently filed a Motion to Exclude Evidence of Damages and Dismiss Plaintiff's Claims, moving to dismiss under Rule 37, FED.R.CIV.P.  Doc. 131.  Specifically, BMPC noted that Plaintiffs had failed to provide a meaningful computation of damages prior to discovery closing and that the subsequent, untimely disclosure did not provide a substantively-compliant computation.  Doc. 131.

In the untimely disclosure, entitled Plaintiffs' Supplemental & Amended Disclosures, Shelby stated the amount of damages she contended she was owed for each week of the limitations period, claiming 70 hours worked and 30 hours overtime every week in the period.  A similar damages amount was provided for each opt-in Plaintiff, claiming 60 hours and 20 hours overtime worked every week in their respective limitations periods.

The Court heard arguments on the Motion on the initial day of trial and permitted Shelby to proceed to trial on her claims, as described in the damages model.  Ultimately, during the course of trial and post-trial findings, Plaintiffs effectively admitted that the untimely damages computation was a sham.

**B.     PLAINTIFFS' DAMAGES THEORY AT TRIAL.**

The Court conducted a bench trial on April 8-9, 22-26, and May 15, 2019.  Plaintiffs entered the untimely damages computation as a trial Exhibit (Pl. Exh. 58).  Throughout trial, Plaintiffs represented that Shelby could prove that she worked 70 hours per week, on average, and that each opt-in Plaintiff worked 60 hours per week, on average.  *See* Tr. 1-19:8-20 (Opening Statement); Tr. 8-63:12-15 (Closing Statement).

Ultimately, Shelby could not establish her claim for overtime hours worked and, as the sole class representative, she could not establish a claim on the opt-in Plaintiffs' behalf.  Simply stated, Shelby failed to identify evidence that could substantiate the hours that she claimed to have worked for even a single workweek.  Rather, Shelby pointed to her own self-serving testimony and scattered e-mail communications.  BPMC's evidence of work activities – including tour logs, telephone records, complete e-mail records, and craigslist account logs – stood in stark contrast to Shelby's allegations.  Not only could Shelby not produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference"[5] – and therefore meet her burden – but BPMC produced evidence that negated the inference Shelby sought to prove.

In the final five minutes of trial, Plaintiffs offered into evidence a new damages schedule with a "formula" different from the Supplemental & Amended Disclosures and the Joint Pretrial Order, never previously articulated by Shelby or any Plaintiff.  While the "formula" for calculating damages was not discernable from the face of the newly-proffered model, the new model, per Shelby's counsel's proffer of evidence, undisputedly calculated damages differently for weeks when Shelby and the opt-in Plaintiffs did not work a complete work week.  Tr. 8-54:13-58:7 (Shelby).

BPMC objected to the introduction of a new damages model in the last five minutes of trial, again requesting dismissal under Federal Rule of Civil Procedure 37.  Plaintiffs then offered to withdraw the modified damages calculation and declined to inquire further in support of its admission.  *Id*.  The Court did not admit the new damages model into evidence.

---

[5] *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Harvill v. Westward Commc'ns, L.L.C.,* 433 F.3d 428, 441 (5th Cir.2005).

**C.      PLAINTIFFS' AMENDED FINDINGS OF FACT & CONCLUSIONS OF LAW.**

On July 18, 2019, over two months after the trial's conclusion, Plaintiffs filed their post-trial, Amended Findings of Fact & Conclusions of Law.  Doc. 148.  There, Plaintiffs materially modified their damages theory and computations.  *See* Doc. 148, Exh. A.

Plaintiffs seemingly maintained the 70- and 60-hour calculations that they had previously pursued in pre-trial disclosures, the Joint Pretrial Order, and during trial and—as happened during trial—claimed that the attached "Exhibit A lists the hours Plaintiffs worked each workweek during the relevant time period."  *Id*. at ¶ 26.  The Exhibit A Plaintiffs' attached, however, entirely contradicted their pre-trial disclosures, pre-trial proposed findings of fact, the Joint Pretrial Order signed by the parties, trial theory, trial testimony, mediation stance, and post-trial proposed findings of fact.  In short, Exhibit A did not account for "an average of 70 hours per week" or "an average of 60 hours per week."  Plaintiffs, without explanation or supporting testimony, included workweeks with purported hours worked of 70, 56 or zero for Shelby and 60, 48, or zero for the opt-in Plaintiffs.  Plaintiffs provided no explanation for these purported hours worked – which deviated entirely from the testimony, judicial filings, and damages theory they had pursued up to that point in time.  Further, Plaintiffs provided no explanation for why – after the close of evidence and without evidentiary basis – they disclosed and pursued an entirely new damages model and theory.

Moreover, Plaintiffs did not state, indicate, or disclose to the Court that the purported hours worked and the associated damages sought per their post-trial "Exhibit A" submission materially changed the information provided to the Court before and during trial.  Instead, Plaintiffs named their new, post-trial computation "Exhibit A" – the exact same document name used for the damages model and computations disclosed a month before trial, and a phrase used *repeatedly* during trial and having specific meaning when Plaintiffs reaffirmed in

7

their testimony the purported accuracy of the damages model that was pursued from its disclosure on March 8, 2019 through the close of the eight-day trial period.

On August 8, 2019, BPMC moved the Court to dismiss the case based on Plaintiffs' submission of untimely and noncompliant damages modeling.[6]

## D.    COURT FINDS PLAINTIFFS ACTED IN BAD-FAITH.

On September 13, 2019, the Court entered its Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Civil Procedure 52(a)(1).  The Court found and held that, as a matter of law, Plaintiffs "failed to establish sufficient evidence to show the amount and extent of their work as a matter of just and reasonable inference."  Doc. 154, p. 13.

With respect to Plaintiffs' disclosures, the Court held that Plaintiffs post-trial damages computation violated the Federal Rules of Civil procedure.  Specifically, the Court stated:

> In this case, Plaintiffs have violated the Federal Rules of Civil Procedure regarding discovery and mandatory disclosures with regards to their amended damages model filed post-trial.  Because the bench trial conducted before the Court was solely on the issue of damages, Plaintiffs cannot seriously contend that they believed the damages model was not in dispute.  To allow Plaintiffs to rely on their post-trial damages model would unfairly prejudice Defendant and, given that trial has concluded, there is no hope that a continuance would cure such prejudice.  Moreover, Plaintiffs have offered absolutely no explanation to the Court of their post-trial damages model in regard to either their decision to label it identically to their earlier damages model or their failure to disclose it earlier.  ***The Court therefore finds as a matter of law that there is no substantial justification for Plaintiffs' discovery violations, the violations are not harmless, and they were committed in bad faith***.  Thus, the Court cannot rely on Plaintiffs' later-filed damages model.

Doc. 154, p. 16 (emphasis added).

---

[6] This constituted BPMC's third motion to dismiss.  First, as noted above, on April 7, 2019, BPMC filed its Motion to Exclude Evidence of Damages and Dismiss Plaintiffs' Claims.  Doc. 131.  Second, as noted above, in the final five minutes of trial, BPMC objected to the introduction of a new damages model, again requesting dismissal.

On October 14, 2019, Plaintiffs filed a Motion for Reconsideration, asking the Court to reconsider and reverse the dismissal of their claims and findings related to their Rule 26 violations.  Doc. 157.  There, Plaintiffs readily acknowledged that they deliberately altered their claim of hours worked but sought forgiveness, arguing that they "merely lowered the damage calculation" – failing to acknowledge the seriousness of the conduct involved (the intentional contradiction of the accuracy (truth) of their own testimony, particularly in the context of an eight-day trial).  Further, Plaintiffs argued that they offered their contradictory post-trial representations of hours worked under the Court's "directive."  However, there is no evidence to support Plaintiffs attempt to shift responsibility for their decisions and strategy onto the Court.

BPMC filed its opposition to Plaintiffs' Motion for Reconsideration on November 4, 2019, detailing the various reasons that Plaintiffs failed to present legitimate grounds for the extraordinary relief requested.  Doc. 162.

On February 24, 2020, the Court issued its order denying Plaintiffs' Motion for Reconsideration.  Doc. 166.  There, the Court reaffirmed its prior findings and conclusions:

> Thus, contrary to Plaintiffs' contention in their Motion for Reconsideration, the Court did not summarily dismiss this case as a sanction for violating a discovery order under Rule 37(b).  Rather, it was Plaintiffs' attempted supplementation of their damages testimony on the last day of trial and in post-trial briefing that the Court forbade under Rule 26(a) and Rule 37(c)(1).  And it was the lack of reliable evidence establishing damages, an essential element of Plaintiffs' FLSA claims, that required the dismissal of this case.

Doc. 166

The Court further emphasized that Plaintiffs' untimely damages model modification -- which contradicted testimony and prior representations -- stands in stark contradiction to the customary and expected practices related to disclosing and proving an essential element of a claim, stating:

Never before has the Court encountered an attempt made so late in the course of a case completely to transmogrify the evidence on one of the essential elements of a claim for relief.  Such conduct was fatal to the credibility of and this Court's reliance on either of Plaintiffs' contradicting damages models, and, accordingly, Plaintiffs' ability to meet their burden of establishing an essential element of their FLSA claims.  Under these circumstances, dismissal was proper.

The Court's findings, therefore, that Plaintiffs' violated Rule 26 and acted in bad-faith remain undisturbed.[7]

## II. LAW & ARGUMENT

### A.   PLAINTIFFS SHOULD PAY REASONABLE ATTORNEY'S FEES CAUSED BY THEIR RULE 26 VIOLATIONS UNDER RULE 37(C)(1).

"A district court has broad discretion on discovery matters, including its decision to issue sanctions for discovery abuse." *Brumley v. Pfizer, Inc.,* 200 F.R.D. 596, 603 (S.D.Tex.2001), *citing Sierra Club Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir.1996).

Rule 37(c)(1) provides the authority for sanctions allowed for a party's failure to disclose or supplement an earlier discovery response.  If a party fails to provide information required by Rule 26(a), the party is not allowed to use that information at a trial, unless the failure

---

[7] On March 19, 2020, the Court entered final judgment for Defendant, based on the Court's orders on September 13, 2019 (Doc. 154) and February 24, 2020 (Doc. 166).  Generally, Rule 37(c)(1) does not establish express time limits.  Rather courts consider whether there has been an unreasonable or undue delay.  *See Long v. Howard U.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008) (stating, "Although this provision does not establish any express time limits within which a motion for sanctions must be filed, unreasonable delay may render such a motion untimely."); *Gen. Steel Dom. Sales, LLC v. Chumley*, 2012 WL 1378536, at *7 (D. Colo. Apr. 20, 2012) (stating, "This undue delay prevented any meaningful attempt to cure the prejudice that Defendants incurred.  Under these circumstances, the Court finds that any further award of sanctions to Defendants is unjustified.").  As explained here, BPMC has acted diligently in objecting to Plaintiff's Rule 37 violations with respect to their disclosures: filing an initial Motion before trial; making an objection during trial, when Plaintiffs attempted to offer the undisclosed and materially different damages calculation; and filing a second Motion shortly after Plaintiffs' submitted the previously undisclosed, materially different damages calculation with their proposed findings of fact and conclusions of law.  As noted here, Plaintiffs subsequently challenged the Court's findings regarding their discovery violation, preserving the issue as a live controversy.  Considering that the Court has now resolved the objections and reaffirmed its findings, and there is finality to the record and fees incurred, Defendant now moves to recover its fees under Rule 37(c)(1).

was substantially justified or harmless.  *Id.*  The court may order, in addition to or instead of the sanction to exclude evidence, payment of the reasonable expenses, including attorney's fees, caused by the Rule 26 violation.  Rule 37(c)(1), FED.R.CIV.P.; *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) ("When a party fails to disclose information required by [Rule] 26(a)...the district court may order alternative sanctions as well, such as awarding costs and attorneys' fees to the other parties.").

The Fifth Circuit describes the sanctions of Rule 37 as "not exclusive or arbitrary," but rather "flexible, and within reason, [they] may be applied in as many or varied forms as the Court desires by exercising broad discretion in light of the facts of each case."  *Guidry v. Continental Oil Co.*, 640 F.2d 523, 533 (5th Cir.1981) (*citing* 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2289, at 791 (1970)).  Indeed, "Rule 37 only requires the sanctions the Court imposes 'hold the scales of justice even'."  *Guidry*, 640 F.2d at 533 (quoting, 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2284, at 764).

"The purpose of Rule 37(c)(1) is to prevent an ambush, resulting in surprise or prejudice, of undisclosed or late disclosed evidence."  *Jonibach Mgt. Tr. v. Wartburg Enterprises, Inc.*, 136 F. Supp. 3d 792, 808 (S.D. Tex. 2015) (citing, *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 85 (5th Cir.1994)).  In establishing this framework, "Rule 37 instructs the court to make orders 'as are just,'" and "[t]he sanctions it enumerates are not exclusive and arbitrary, but flexible, selective, and plural, and the district court may, within reason, use as many and as varied sanctions as are necessary to 'hold the scales of justice even.'"  *Id.* (citing, 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2284, at 612-13).

Courts grant attorney's fees for Rule 26 violations in far less egregious circumstances than those created by Plaintiffs' actions.  For example, in *Jackson v. United Artists*

*Theatre Cir., Inc*., the plaintiff failed to provide the defendant with a computation of her medical expense damages prior to the close of discovery, while the case was still in the summary judgment phase.  278 F.R.D. 586, 595 (D. Nev. 2011).  The court explained that courts are more likely to exclude damages evidence when a party first discloses its computation shortly before trial or substantially after discovery has closed.  *Id*. at 594 (stating, "Courts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed.") (citing, *CQ Inc. v. TXU Mining Company,* 565 F.3d 268 (5th Cir.2009)).  The court decided not to dismiss the case or certain claims, but rather found that an appropriate sanction was to exclude from trial any testimony and evidence that had not been disclosed and awarded the defendant reasonable attorney's fees and costs in pursuing the motion for sanctions relating to the plaintiff's failure to comply.  *Id*. at 595 (stating, "The Court nevertheless concludes that some sanction should be imposed on Plaintiffs' counsel for their unjustified failure to provide a computation of damages prior to the close of discovery…The Court will also award Defendant reasonable attorney's fees and costs in pursuing the motion for sanctions relating to Plaintiffs' failure to comply with Rule 26(a)(1)(A)(iii).").

Similarly, in *Hache v. Damon Corp*., the plaintiff provided only an evasive, nonresponsive statement without any monetary computation of alleged damages sought.  2007 WL 4365658, at *1 (M.D. Fla. Dec. 13, 2007).  As a result, the defendant sought to prevent the plaintiffs from pursuing any past, present, or continuing economic damages and argued that the court should preclude the plaintiffs from introducing during pretrial or trial any evidence of damages.  *Id*.  The court concluded that the plaintiffs failed to show that their noncompliance with the disclosure requirements was substantially justified or the result of harmless error.  *Id*. at *2.  Ultimately, the court ordered the plaintiffs to produce the requested discovery and found

that monetary sanctions against the plaintiffs for attorney's fees and costs incurred by the defendant in bringing the motion were appropriate. *Id.* (stating, "The court finds, however, that monetary sanctions against Plaintiffs pursuant to Rule 37(c)(1)(A) for attorneys' fees and costs incurred by Defendant in bringing the instant motions are more than appropriate at this juncture.").[8]

Here, Plaintiffs' violations involved both tardy and incomplete disclosures in combination with subsequent, contradictory disclosures provided *after* trial and *after* the close of evidence. *The essential truth is this: Plaintiffs' sequence of disclosures reveals that they knowingly forced an unwarranted, bad faith trial as to damages—with all of its costs and disruption—on BPMC.* Plaintiffs' actions run directly contrary to the disclosure obligations and the core values established by the Federal Rules of Civil Procedure. *See Hovanec v. Miller*, 331

---

[8] *See Nguyen v. Versacom*, LLC, 2016 WL 7426126, at *6 (N.D. Tex. Dec. 23, 2016) (stating, "But although defendants' failure to comply with the court's trial setting order and Rule 26(a)(3) does not warrant the severe sanction of excluding defendants' evidence—essentially, entering a default judgment—plaintiffs are entitled to recover their attorney's fees caused by the failure."); *Greene v. Alan Waxler Group Charter Services, LLC*, 2014 WL 1089667, at *3 (D. Nev. Mar. 18, 2014) (stating, "In addition, Plaintiffs' failure to comply with the disclosure requirements of Rule 26(a) necessitated the pending motion. As a result, the Court grants Defendants' request for attorney's fees."); *Allstate Ins. Co. v. Nassiri*, 2011 WL 2977127, at *7 (D. Nev. July 21, 2011) (stating, "None of this, however, excuses Allstate's failure to timely disclose the method or formula used to calculate its alleged damages….The award of attorney's fees and costs is an appropriate lesser sanction pursuant to Rule 37(c)(1)(A), given Allstate's misleading failure to disclose the actual method it used to calculate the settlement value of the underlying claims."); *Water v. HDR Engr., Inc.*, 2011 WL 13176484, at *7-9 (M.D. Fla. May 11, 2011) (stating, "Plaintiff's delay in serving its Amended Rule 26(a)(1)(A)(iii) Initial Disclosures until nearly eighteen months after this lawsuit was filed and six months before the discovery deadline was unjustified…HDR will be permitted to re-depose Kennedy or Adams or both, solely on the issue of Plaintiff's lost use damages, with expenses…including attorney's fees…."); *CCR/AG Showcase Phase I Owner, L.L.C. v. United Artists Theatre Cir., Inc.*, 2010 WL 1947016, at *11-12 (D. Nev. May 13, 2010) (stating, "Although the Court elects to impose less severe sanctions than evidence exclusion, it finds that United Artists and/or its counsel have been evasive and have engaged in apparent gamesmanship by failing to timely and forthrightly disclose United Artists' lost profits damages claim….The Court further awards Plaintiff its reasonable attorney's fees in prosecuting the instant Motion."); *see also*, *Timoschuk v. Daimler Trucks N.A., LLC*, 2014 WL 585430, at *3 (W.D. Tex. Feb. 14, 2014) (stating, "Although the Court allows Plaintiffs leave to designate their expert, their knowing disregard of the Court's disclosure deadline is cause for sanctions….Sanctions can include requiring the party breaching the Court's expert disclosure deadline to pay the expenses associated with any additional expert discovery….Therefore, to mitigate some of the additional costs to Freightliner and to sanction Plaintiffs for their knowing disregard of the Court's expert disclosure deadline, Plaintiffs are ordered to pay the reasonable deposition costs….").

F.R.D. 624, 636–37 (W.D. Tex. 2019) (stating, "Rule 26's requirements and the Rule 37 sanctions aim to prevent an ambush, resulting in surprise or prejudice…Plaintiff failed to provide the required disclosures on damages, and then thwarted Defendant's attempt to clarify her damages at her deposition….Yet [Plaintiff] apparently wishes to proceed with all of her damages claims and evidence at trial.  This is exactly the scenario that Rule 26 and Rule 37 aim to avoid."); *In re High Stand. Mfg. Co., Inc*., 2017 WL 3701223, at *3 (S.D. Tex. Aug. 24, 2017) (stating, "An additional goal of these disclosure requirements…is 'to prevent the practice of sandbagging an opposing party…[T]he rules aim to prevent an ambush, resulting in surprise or prejudice…") (internal quotations omitted).

In addition, as described above, the Court found that Plaintiffs acted in bad-faith.  Notably, an award of attorney's fees under Federal Rule of Civil Procedure 37(c)(1) does not require a finding of bad-faith.  *DHI Group, Inc. v. Kent*, 2019 WL 1958390, at *2 (S.D. Tex. May 1, 2019) (stating, "Here, notwithstanding Oilpro's adamant arguments that the Magistrate Judge relied on her inherent authority in issuing the sanctions, which would require a finding of bad faith, there is no clear error in imposing sanctions even without bad faith if she did so within the confines of Federal Rule of Civil Procedure 37(c)(1).").  Plaintiffs' bad faith conduct,

14

therefore, is more egregious than the circumstances contemplated by Rule 37, as it applies to Rule 26 enforcement.[9] [10]

Further, in violating the Federal Rules of Civil Procedure in bad-faith, Plaintiffs intentionally misled the Court.  As described in BPMC's Post-Trial Proposed Findings of Fact and Conclusions of Law, later confirmed by their own post-trial filings, Shelby and the opt-in Plaintiffs made intentional misrepresentations in the pursuit of greatly exaggerated claims and alleged hours worked.  During trial and in their proposed findings of fact, BPMC pointed to various examples of Shelby and opt-in Plaintiffs presenting implausible testimony in pursuit of the claims of 70 and 60 hours per workweek.  Doc. 149-1, p. 79-84.  For example, Shelby provided contradictory explanations for entering varied hours into her own timesheets while still claiming those numbers were fabricated and unreliable.  Shelby insisted upon the 70 hour "on average" model.

BPMC argued that the insistence of Shelby that she worked 70 hours on average, and the mathematical infeasibility in the averaging concept that Shelby presented at trial, could not credibly be said to have been based on fact.  Shelby's and others' testimony of purported work hours, while clearly targeted towards supporting a payout of 30/20 hours of overtime per week, was focused on justifying the damages schedule rather than communicating truthfulness as to work activities performed as the basis for damages.

---

[9] Although Rule 37 applies to the circumstances Plaintiffs' admittedly created, the Court also possesses inherent powers to impose sanctions in the event the rules do not provide an adequate remedy.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power.  But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

[10] Plaintiffs' actions related to their damages computation aligns with their overall approach to this litigation.  They repeatedly evaded discovery, refusing to provide critical information during the discovery process, including, but not limited to refusing to appear for depositions and not producing social media records ordered by the Court.

Plaintiffs proved BPMC's defense true in their post-trial filings when they effectively admitted that their sworn testimony at trial was knowingly directed at proving a false damages model. This admission is the most troubling aspect of this case. Plaintiffs and their counsel relentlessly pursued the 70/60 hours "on average" model, suggesting at times that even the 70/60 implausible numbers were "conservative estimates." Tr. 1-20:21-25 ("The evidence is going to show that there are many weeks that Ms. Shelby worked more than 70 hours, and the opt-in plaintiffs worked more than 60 hours. So these, your honor, are conservative numbers that we are presenting to the Court."). As noted above, there is no evidence to support the initial 70/60 "on average" model, which was the subject of the eight-day bench trial, or to support the subsequent post-trial damages model. As noted by the Court, the second model deviates sharply from the original model. *See* Doc. 166 (stating, "Never before has the Court encountered an attempt made so late in the course of a case completely to transmogrify the evidence on one of the essential elements of a claim for relief.") The disparity between the models, in and of itself, is such that the Court cannot attribute the difference to poor memory or reflection, especially when considering the deliberate choices made by the Plaintiffs through the course of the litigation and during trial. Rather, although both models were entirely discredited and not supported by the record evidence, the very existence of a second contradictory model demonstrates that Plaintiffs must have known that the original model, and accompanying testimony, was false.

In short, Plaintiffs themselves, and through their counsel, affirmatively and knowingly misrepresented their claims of damages. An award of attorney's fees is both appropriate and necessary to curb such deliberate actions by litigants. *See Batson v. Neal Spelce Associates, Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) (stating, "[T]he assessment of attorney's fees is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter

16

others who might be tempted to follow in similar conduct."); *Tesco Corp. v. Weatherford Intern., Inc.*, 2014 WL 4244215, at *6 (S.D. Tex. Aug. 25, 2014) (stating, "Beyond the effect on Defendants, the Court has an independent obligation to safeguard its own integrity and those of the proceedings before it…Such misrepresentations irrevocably poisoned these proceedings, and could not have been calculated to assist the Court in the administration of justice, but only to win an advantage. Accordingly, the Court reluctantly concludes that Tesco's representations amount to an abuse of the judicial system; they are most certainly 'acts which degrade the judicial system.'") (citing, *Amsted Industries Inc. v. Buckeye Steel Castings Co*., 23 F.3d 374, 379 (Fed. Cir. 1994) (stating, "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [statutes or] rules, the court ordinarily should rely on the [statutes or] rules rather than the inherent power…The court should resort to its inherent power only where the rules or statutes do not reach the acts which degrade the judicial system.") (internal quotations omitted).

## B. COMPUTATION OF ATTORNEY'S FEES AWARD BASED ON PLAINTIFFS' MISCONDUCT AND DISCOVERY VIOLATIONS.

Attorney's fees awarded under Rule 37 are calculated using the 'lodestar' method. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002). "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id*. (citing, *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir.1999)). Further, "[f]or Rule 37 sanctions, the affidavit of movant's counsel can serve as proof of the amount to be awarded." *Id*. (citing, *Shipes v. Trinity Indus.,* 987 F.2d 311, 323–24 (5th Cir. 1993)).

Under Rule 37, a party and its counsel "can only be held responsible for the reasonable expenses [including attorney's fees] caused by their failure to comply with

discovery." *Tollett*, 285 F.3d at 368 (citing, *Chapman & Cole & CCP, Ltd. v. Itel Container Int'l B.V.,* 865 F.2d 676, 687 (5th Cir. 1989)); *see Batson v. Neal Spelce Assocs., Inc.,* 765 F.2d 511, 516 (5th Cir.1985) (the "plain language of Rule 37 ... provides that only those expenses, including fees, caused by the failure to comply may be assessed against the noncomplying party").

Here, as explained above, Plaintiffs' discovery violation occurred March 8, 2019, when they disclosed a damages computation that they themselves later disavowed – in contradiction to their trial theory and sworn testimony.  At that time, Plaintiffs sought to pursue a damages model that they knew to be untethered from reality.  Plaintiffs resisted BPMC's initial motion, arguing that their disclosures were both compliant with Federal Rule of Civil Procedure 26 and, therefore, an accurate representation of their allegations.  Plaintiffs pursued their theory during the eight-day bench trial, forcing BPMC to defend against allegations that Plaintiffs later conceded were inaccurate and false.  Subsequently, Plaintiffs amended damages model forced BPMC to move to dismiss for a third time.  Subsequently, Plaintiffs continued attempt to justify their bad-faith conduct forced BPMC to respond to a Motion for Reconsideration.

The fees incurred in undertaking these steps amounts to $335,674.18, which is calculated by multiplying the number of hours worked as a result of Plaintiffs' pursuit of a false damages model in this case, *after* downward adjustments for billing judgment, by their hourly billing rates.  No paralegal time has been included; only the time of the primary defense counsel.  BPMC has attached a declaration by its undersigned counsel, Teresa Valderrama, including redacted/summarized billing records substantiating the hours and fees.  BPMC seeks an award of fees in this amount.  Both the compensable hours and the hourly rates used to determine these amounts are reasonable and provide a proper basis for this award.

18

## III. CONCLUSION

Based on the conduct described above, BPMC asks the Court to award attorney's fees pursuant to Rule 37 and that the Court award BPMC such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

*/s/ Teresa Valderrama*
**TERESA VALDERRAMA**
Texas Bar No. 20422500
SD No. 10687
**MAURO RAMIREZ**
Texas Bar No. 24060460
SD No. 877306
**FISHER & PHILLIPS LLP**
910 Louisiana Street, Suite 4000
Houston, TX  77002
Telephone:  (713) 292-0150
Facsimile:  (713) 292-0151
tvalderrama@fisherphillips.com

**DAVID CASTANEDA**
State Bar No. 00790438
TXSD: 19586
davidc@boxerproperty.com

**BOXER PROPERTY MANAGEMENT CORPORATION**
720 North Post Oak Rd., Ste. 500
Houston, Texas 77024
(713) 777-7368
(713) 780-9708

**ATTORNEYS FOR DEFENDANT**

FP 36811390.7

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SHERRY SHELBY, individually and on behalf of all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 4:16−cv−01549** |
| | § | |
| **v.** | § § | |
| **BOXER PROPERTY MANAGEMENT CORPORATION,** | § § § | |
| **Defendant.** | § | |

## DECLARATION OF TERESA S. VALDERRAMA

I, Teresa S. Valderrama, hereby declare and state as follows:

1.  "My name is Teresa Valderrama.  I am over 18 years of age, of sound mind, and capable of making this affidavit.  The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.  I am an attorney duly licensed by the Texas bar since 1988; I am admitted to practice before all courts in the State of Texas, including this federal district court.  I also am a member of the bar of the United States Fifth Circuit Court of Appeals and the Supreme Court of the United States.  I am a Partner at Fisher & Phillips, LLP, located at 910 Louisiana St., Ste. 4000, Houston, Texas 77002.

3.  I have over 30 years of experience practicing law and civil litigation and have devoted the majority of my legal career to labor and employment matters.  I am Board Certified in Labor & Employment Law by the Texas Board of Legal Specialization, and I have been continuously certified since 1993.  Early in my career I taught employment law as an adjunct professor at the University of Houston School of Law, and I have been invited to speak, and speak regularly, at accredited CLE programs on matters pertaining to employment law—including as to the Fair Labor Standards Act, trial procedures and evidence, and ethics, among other subjects.

4.  The Defendant in the above-referenced matter, Boxer Property Management Corporation, retained Fisher & Phillips LLP to defend against the personal and collective action claims asserted by Sherry Shelby ("Plaintiff"), and I am lead counsel of record for Defendant in this matter.  I have personal knowledge of this case and the work performed by Fisher & Phillips on behalf of Defendant.  Based on my personal knowledge, and in my role as the attorney-in-charge for Defendant in the instant matter, I assert the facts set forth herein and

in the attached Fee Exhibit and, if called as a witness, I can and I would competently testify thereto.

5.      It was necessary for Defendant to retain an attorney with my level of skill and expertise on this case to defend against the claims asserted by Plaintiff.

6.      Based on the claims and scope of this litigation, it was also necessary for me to include an additional attorney, Mauro Ramirez, Partner at Fisher & Phillips LLP, to defend against the claims asserted by Plaintiff.  Mr. Ramirez has more than 13 years of experience practicing law, including labor and employment matters and trials and arbitrations.

7.      Defendant agreed to compensate Fisher & Phillips LLP for our work in defending this matter.  For this matter, my work is billed at a rate of $463.00 per hour, and Mr. Ramirez is billed at a rate of $395.25 per hour.  These hourly rates are well within what is reasonable, necessary, and customary in this locality, for this type of matter, and by attorneys of our experience level.

8.      For purposes of this motion, I have prepared an Exhibit to this declaration that presents the fees billed for which recovery is sought.  I have excluded fees charged for any work prepared by paralegals or by attorney timekeepers other than myself or Mr. Ramirez.  I also have excluded time for work not necessary to the defense of damages model presented March 8, 2019.  Specifically, I reviewed the time involved, both at the time it was billed and currently in connection with Defendant's request for a fee award, to verify that it is not duplicative, and that it was both reasonable and necessary to defend against Plaintiffs' March 8, 2019 damages model.

9.      I spent at least 366.2 hours of billable time in defense of Plaintiffs' March 8, 2019 damages model.  This includes time spent preparing for trial, preparing a motion to dismiss based on Plaintiffs' untimely disclosures, attending trial, preparing post-trial findings of fact, preparing a motion to dismissed based on Plaintiffs' modified damages model, and time spent responding to Plaintiffs' Motion for Reconsideration – further pursuing their bad-faith damages models.

10.     Mr. Ramirez spent at least 420.3 hours of billable time in defense of Plaintiffs' March 8, 2019 damages model.  This includes time spent preparing for trial, preparing a motion to dismiss based on Plaintiffs' untimely disclosures, attending trial, preparing post-trial findings of fact, preparing a motion to dismissed based on Plaintiffs' modified damages model, and time spent responding to Plaintiffs' Motion for Reconsideration – further pursuing their bad-faith damages models.

11.     As noted above, the time described above is reflected in the attached **Exhibit A** setting forth, for each action, the date, the amount of time spent, a description of the work performed, and the fees billed.

12.     Based on the hourly rate of $463.00 per hour, the amount of fees billed for the 463 hours I spent in defense of Plaintiffs' bad-faith damages models amounts to $169,550.60.

13.     Based on the hourly rate of $395.25 per hour, the amount of fees billed for the 395.25 hours Mr. Ramirez spent in defense of Plaintiffs' bad-faith damages models amounts to $166,123.58.

14.     In total, therefore, Defendant incurred $335,674.18 in fees billed for the defense of the bad faith damages model pursued by Plaintiffs beginning March 8, 2019.

15.     These time entries and associated fees were reasonable and necessary.

16.     The time entries and associated fees incurred in the attached document were segregated from the fees incurred with respect to other activities not involving responding to Plaintiffs' March 8, 2019 damages model.

Pursuant to 28 U.S.C. §1746 and under the laws of the State of Texas (and New Mexico, if applicable), I declare under penalty of perjury that the foregoing is true and correct, and known by me through my personal knowledge.  I verify that I executed this Declaration electronically on April 2, 2020, in Bernalillo County, New Mexico.

*/s/ Teresa Valderrama*
**TERESA VALDERRAMA**
Texas Bar No. 20422500
SD No. 10687

**FISHER & PHILLIPS LLP**
910 Louisiana Street, Suite 4000
Houston, TX  77002
Telephone:  (713) 292-0150
Facsimile:  (713) 292-0151
tvalderrama@fisherphillips.com

# EXHIBIT A

| | Fees incurred Pre-Trial, after untimely March 8, 2019 disclosure and in defense of 70/60 model. | | | |
|---|---|---|---|---|
| **Date** | **Timekeeper** | **Hrs** | **Amount** | **Narrative** |
| 3/12/2019 | Valderrama, Teresa S. | 2.8 | $ 1,296.40 | Receive, review new disclosures served by plaintiffs by mail on March 8, 2019, evaluating impact on case. |
| 3/13/2019 | Ramirez, Mauro | 1.3 | $ 513.83 | Review emails and analyze Shelby's craigslist postings for inclusion in exhibit list and demonstratives. |
| 3/13/2019 | Ramirez, Mauro | 2.4 | $ 948.60 | Review and analyze emails sent and received by Sherry Shelby and Rodney Hale to include in exhibit list. |
| 3/13/2019 | Valderrama, Teresa S. | 0.3 | $ 138.90 | Telephone conference with opposing counsel regarding bench trial. |
| 3/13/2019 | Valderrama, Teresa S. | 0.3 | $ 138.90 | Prepare, issue email to court coordinator notifying of bench trial agreement, requesting information as to whether formal notice is required, and review of various response from court and opposing counsel. |
| 3/13/2019 | Valderrama, Teresa S. | 1.2 | $ 555.60 | Work on demonstrative exhibits and collecting back up data. |
| 3/14/2019 | Ramirez, Mauro | 3.6 | $ 1,422.90 | Continue to review and analyze emails sent and received by Sherry Shelby and Rodney Hale to include in Exhibit List. |
| 3/14/2019 | Ramirez, Mauro | 3.4 | $ 1,343.85 | Research related to various issues, including standards of proof regarding damages, in preparation for pre-trial and post-trial briefing. |
| 3/14/2019 | Valderrama, Teresa S. | 2.3 | $ 1,064.90 | Continue work on trial preparations, including exhibit list scope. |
| 3/15/2019 | Ramirez, Mauro | 6.4 | $ 2,529.60 | Review and analyze time sheets, audit sheets, phone records, emails, and CraigsList in order to verify and collect data underlying demonstrative exhibits for trial. |
| 3/15/2019 | Valderrama, Teresa S. | 1.2 | $ 555.60 | Continue trial preparations, including exhibit list scope and demonstrative graphics, including back-up data. |
| 3/18/2019 | Ramirez, Mauro | 7.5 | $ 2,964.38 | Review and analyze extensive group of emails sent and received by Sherry Shelby to identify information relevant to demonstrative exhibits and relevant to her work hours and lunch schedule. |
| 3/18/2019 | Valderrama, Teresa S. | 2.6 | $ 1,203.80 | Develop trial testimony, exhibits, and exhibit list, review of salient emails and other documents. |
| 3/19/2019 | Valderrama, Teresa S. | 3.2 | $ 1,481.60 | Prepare for, meet with client Alex Kakhnovets for trial preparation. |
| 3/19/2019 | Valderrama, Teresa S. | 1.3 | $ 601.90 | Develop trial testimony, exhibits, and exhibit list, review of salient emails, other documents. |
| 3/20/2019 | Ramirez, Mauro | 6.5 | $ 2,569.13 | Review and analyze extensive group of emails sent and received by Rodney Hale in order to identify emails and information relevant to demonstrative exhibits and to identify emails relevant to his work hours and lunch schedule. |
| 3/20/2019 | Valderrama, Teresa S. | 1.6 | $ 740.80 | Develop trial testimony, exhibits, and exhibit list, review of salient emails and other documents. |

| 3/21/2019 | Ramirez, Mauro | 2 | $ | 790.50 | Continue to review extensive group of emails sent and received by Sherry Shelby and Rodney Hale and produced during discovery to identify emails pertinent to work hours. |
|-----------|----------------|---|---|--------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 3/22/2019 | Ramirez, Mauro | 2.1 | $ | 830.03 | Review and revise information related to demonstrative exhibits for Rodney Hale. |
| 3/22/2019 | Valderrama, Teresa S. | 2.7 | $ | 1,250.10 | Prepare for and meet with client John Rentz for witness preparation. |
| 3/22/2019 | Valderrama, Teresa S. | 1 | $ | 463.00 | Work on exhibit preparations. |
| 3/25/2019 | Ramirez, Mauro | 4.5 | $ | 1,778.63 | Review and analyze documents for exhibit list, consider evidence and strategy, and conduct research and analysis regarding defenses for trial. |
| 3/26/2019 | Ramirez, Mauro | 4.8 | $ | 1,897.20 | Review and analyze documents for exhibit list, including review and identification of relevant documents for demonstrtive exhibits, defenses, and arguments related to the lack of proper disclosures, and conduct related research and analysis. |
| 3/26/2019 | Valderrama, Teresa S. | 1.2 | $ | 555.60 | Work on witness preparation and subpoena efforts. |
| 3/27/2019 | Ramirez, Mauro | 1.6 | $ | 632.40 | Review and analyze documents for exhibit list, including review and identification of relevant documents for demonstrtive exhibits, defenses, and arguments related to the lack of proper disclosures, and conduct related research and analysis. |
| 3/27/2019 | Valderrama, Teresa S. | 1.2 | $ | 555.60 | Work on exhibit selection and preparations. |
| 3/28/2019 | Ramirez, Mauro | 5.9 | $ | 2,331.98 | Prepare pre-trial briefings related to burdens of proof, sufficiency of evidence, exclusion of evidence related to damages, including research into various related issues. |
| 3/28/2019 | Valderrama, Teresa S. | 1.6 | $ | 740.80 | Develop trial testimony, exhibits and exhibit list, review of salient emails and other documents. |
| 3/28/2019 | Valderrama, Teresa S. | 0.5 | $ | 231.50 | Review subpoenas issued by Plaintiffs to Alex Kakhnovetz and Betty Jean Larson. |
| 3/29/2019 | Ramirez, Mauro | 6.7 | $ | 2,648.18 | Prepare pre-trial briefing related to burdens of proof, sufficiency of evidence, exclusion of evidence related to damages, including research into various issues and review and revise pre-trial order submitted by Plaintiffs. |
| 3/30/2019 | Valderrama, Teresa S. | 2.6 | $ | 1,203.80 | Examine authorizes, prepare Sherry Shelby and Rodney Hale examinations based on authorities. |
| 4/1/2019 | Ramirez, Mauro | 9.5 | $ | 3,754.88 | Prepare and revise Joint Pre-Trial Order, exhibit list, and review items identified by Plaintiffs; prepare and research Motions to Exclude Evidence of Damages and Attorney's Fees. |
| 4/1/2019 | Valderrama, Teresa S. | 4.5 | $ | 2,083.50 | Work on Joint Pretrial Order, including examination of plaintiffs' submission, inclusion of falsification of data as element of claims, finalization of exhibit and witness lists, etc.   Multiple email communications from Plaintiffs' counsel concerning same. |
| 4/1/2019 | Valderrama, Teresa S. | 0.3 | $ | 138.90 | Consult with M. Ramirez on motion to exclude evidence and motion concerning failure to meet Rule 26(f) obligations concerning damages calculations. |

| 4/2/2019 | Ramirez, Mauro | 2.1 | $ | 830.03 | Review and analyze emails identified by Plaintiffs in their exhibit list. |
|---|---|---|---|---|---|
| 4/2/2019 | Valderrama, Teresa S. | 0.1 | $ | 46.30 | Review Plaintiffs' subpoena of John Rentz. |
| 4/2/2019 | Valderrama, Teresa S. | 9 | $ | 4,167.00 | Work on direct examination of Alex Kakhnovets, including review of deposition, selection of documents for which he is sponsoring witness, etc.  Work on revisions to demonstrative exhibits.  Work on motion to dismiss as part of initial filing based on Rule 26 obligations of plaintiffs. Work on continuing review of email correspondence and evidence, identified as general exhibit, for purposes of cross examination and rebuttal of Plaintiff's claims. |
| 4/3/2019 | Ramirez, Mauro | 0.4 | $ | 158.10 | Prepare pre-trial filings, including findings of fact and conclusions of law. |
| 4/3/2019 | Valderrama, Teresa S. | 9 | $ | 4,167.00 | Continued work on trial preparations including meeting with Alex Kakhnovets, including review of deposition, selection of documents for which he is sponsoring witness, etc.  Work on continuing revisions to demonstrative exhibits.  Work on selection and incorporation of AT&T (personal) records of Sherry Shelby.  Work on motion to dismiss as part of initial filing based on Rule 26 obligations of plaintiffs. Work on continuing review of email correspondence and evidence, identified as general exhibit, for purposes of cross examination and rebuttal of plaintiff's claims. |
| 4/4/2019 | Ramirez, Mauro | 10.5 | $ | 4,150.13 | Review and analyze Plaintiff's emails in anticipation of their arguments; review, research and revise pre-trial filings including motions, joint pretrial order, exhibit list, witness list, and possible rebuttal items; review and analyze demonstrative exhibits for Sherry Shelby and Rodney Hale to assure accuracy. |
| 4/4/2019 | Valderrama, Teresa S. | 9 | $ | 4,167.00 | Continued work on trial preparations.  Meeting with John Rentz.  Continue review of plaintiffs' 320 email documents in support of claims.  Continued work on motions/briefing on dismissal based Plaintiffs' 60/70 hour workweek model and objections to failure to provide discovery during lawsuit. |
| 4/5/2019 | Ramirez, Mauro | 8.1 | $ | 3,201.53 | Prepare trial outlines, review and analyze exhibits and prepare amended exhibit lists, prepare and research pre-trial and trial memorandums. |
| 4/5/2019 | Valderrama, Teresa S. | 9 | $ | 4,167.00 | Continued work on trial preparations.  Meeting with Alex Kakhnovets and with Betty Jean Larson.  Continue review of Plaintiffs' 320 email documents, social media posts, for purposes of cross examination of Sherry Shelby and Rodney Hale.  Continued work on motions/briefing on dismissal.  Work on direct examination scope, cross examination scope, etc. |
| 4/5/2019 | Valderrama, Teresa S. | 0.7 | $ | 324.10 | Provide revisions for Sherry Shelby and Rodney Hale demonstrative exhibits. |

| 4/6/2019 | Ramirez, Mauro | 8.5 | $ 3,359.63 | Prepare and research pre-trial and trial memorandums, including review of case law, and review and revise demonstrative exhibits. |
|---|---|---|---|---|
| 4/6/2019 | Valderrama, Teresa S. | 9 | $ 4,167.00 | Continued work on trial preparation, including finalizing cross examination for Sherry Shelby, selection of documents potentially for use in cross examination, continued work on demonstrative exhibits, finalization of motions and supporting briefing on Rule 26(f) failure to disclose mandatory information or to comply with Court orders. |
| 4/7/2019 | Ramirez, Mauro | 12.5 | $ 4,940.63 | Trial preparations including review, revision and collection of information for demonstrative exhibits and review and update trial materials and pre-trial briefings, including proposed findings of fact and conclusions of law and Rule 37 motions to dismiss. |
| 4/7/2019 | Valderrama, Teresa S. | 10 | $ 4,630.00 | Continued work on trial preparation, including finalizing cross examination for Sherry Shelby, selection of documents potentially for use in cross, continued work on demonstrative exhibits, finalization of motions and supporting briefing on Rule 26(f) failure to disclose mandatory information or to comply with court orders, working on direct exainations for John Rentz, Betty Jean Larson and Alex Kakhnovets in light of Plaintiffs' subpoena of same and potential to be called out of order. Meet with Alex Kakhnovets for trial preparations. File pretrial motions, proposed findings of fact, conclusions of law aligned with trial strategy relative to Plaintiffs' 60 and 70 hour model. |
| | Subtotal: | 198.5 | $ 84,432.68 | |

| **Fees during Trial (Days 1-2), defending against 70/60 model disclosed by Plaintiffs.** | | | | |
|---|---|---|---|---|
| **Date** | **Timekeeper** | **Hrs** | **Amount** | **Narrative** |
| 4/8/2019 | Ramirez, Mauro | 14.5 | $ 5,731.13 | Prepare for and attend trial, including preparing and arguing motion to dismiss and assistance regarding witness preparation, cross examination, and other strategic decisions; and prepare for second day of trial. |
| 4/8/2019 | Valderrama, Teresa S. | 11 | $ 5,093.00 | Represent client in trial of matter, including early morning preparations for travel to courthouse, representation during Plaintiff Sherry Shelby's initial testimony and cross, and evening preparations for following day's examination of Shelby. |
| 4/9/2019 | Ramirez, Mauro | 8.5 | $ 3,359.63 | Prepare for and attend second day of trial, including assistance with cross for plaintiff and strategic decisions and planning regarding trial and mediation. |
| 4/9/2019 | Valderrama, Teresa S. | 10 | $ 4,630.00 | Represent client in trial of matter, including early morning preparations for travel to courthouse, representation during Plaintiff Shelby's examination, and potential mediation. Selection of mediator for following day. Prepare for good faith mediation per Court's request. |
| | Subtotal: | 44 | $ 18,813.75 | |

| **Fees during Mediation, negotiating resolution of 70/60 model disclosed by Plaintiffs.** | | | | |
|---|---|---|---|---|
| **Date** | **Timekeeper** | **Hrs** | **Amount** | **Narrative** |
| 4/10/2019 | Valderrama, Teresa S. | 6 | $ 2,778.00 | Pre-mediation preparations.  Identify material for Nancy Huston's review. Prepare for, attend mediation with Nancy Huston, return to office following failed mediation. |
| 4/18/2019 | Valderrama, Teresa S. | 1 | $ 463.00 | Lengthy call from mediator discussing possible settlement offer. |
| 4/18/2019 | Valderrama, Teresa S. | 1 | $ 463.00 | Receive, review detailed letter brief from plaintiffs' counsel regarding right to receive attorneys' fees. |
| 4/19/2019 | Valderrama, Teresa S. | 0.3 | $ 138.90 | Receive, review mediator's suggestion of bracket. |
| 4/23/2019 | Valderrama, Teresa S. | 0.3 | $ 138.90 | Communications with N. Huston regarding possible mediator's proposal. |
| | Subtotal: | 8.6 | $ 3,981.80 | |

| | | | | |
|---|---|---|---|---|
| **Fees during Trial (Days 5-7), defending against 70/60 model disclosed by Plaintiffs.** | | | | |
| **Date** | **Timekeeper** | **Hrs** | **Amount** | **Narrative** |
| 4/10/2019 | Valderrama, Teresa S. | 6 | $  2,778.00 | Work on trial preparations, including continued work on demonstratives.  Prepare notice to A. Rivera regarding failed mediation, requesting time to return to court. |
| 4/11/2019 | Ramirez, Mauro | 1.1 | $    434.78 | Prepare outline for direct questioning of Kellie Bunyi. |
| 4/16/2019 | Ramirez, Mauro | 3.2 | $  1,264.80 | Meet with Kellie Bunyi in preparation of direct examination. |
| 4/17/2019 | Valderrama, Teresa S. | 2.5 | $  1,157.50 | Meet with Betty Jean Larson in connection with trial preparation. |
| 4/18/2019 | Ramirez, Mauro | 1.5 | $    592.88 | Prepare research related to representative testimony. |
| 4/18/2019 | Valderrama, Teresa S. | 3 | $  1,389.00 | Prepare for meeting with, meet with Alex Kakhnovets in connection with trial preparation. |
| 4/18/2019 | Valderrama, Teresa S. | 4 | $  1,852.00 | Prepare for afternoon meeting with, meet with Betty Jean Larson in connection with trial preparation. |
| 4/18/2019 | Valderrama, Teresa S. | 0.3 | $    138.90 | Receive, review filing of amended witness list for Plaintiffs that includes Dawn Eastridge. |
| 4/19/2019 | Ramirez, Mauro | 4.2 | $  1,660.05 | Meet with Kellie Bunyi regarding direct examination. |
| 4/19/2019 | Valderrama, Teresa S. | 4 | $  1,852.00 | Prepare for morning meeting with, followed by meeting with John Rentz regarding trial preparation. |
| 4/19/2019 | Valderrama, Teresa S. | 5.8 | $  2,685.40 | Review background information on D. Eastridge.  Brief telephone call to D. Eastridge regarding reasons for testimony, past communications regarding lawsuit, etc.  Work on cross examination questions for Eastridge.  Continue trial preparations. |
| 4/20/2019 | Ramirez, Mauro | 6.5 | $  2,569.13 | Review email communications by Plaintiffs to identify emails for cross examination. |
| 4/20/2019 | Valderrama, Teresa S. | 6.8 | $  3,148.40 | Work on cross examination of Sherry Shelby, to resume Monday. Review finalized excerpts from Shelby personal cell phone records. Work on direct examinations in light of possibility witnesses will be called out of order. |
| 4/21/2019 | Ramirez, Mauro | 6.5 | $  2,569.13 | Review emails, documents, and other information in preparation for trial, including information related to demonstrative exhibits and email communications. |
| 4/21/2019 | Valderrama, Teresa S. | 10.8 | $  5,000.40 | Continued work on outlines and exhibits for direct examinations and cross examinations. Incorporate finalized demonstrative exhibits for Sherry Shelby into cross.  Incorporate supplemental exhibits into cross examination. |
| 4/21/2019 | Valderrama, Teresa S. | 0.3 | $    138.90 | Communications with Plaintiffs' counsel, then with John Rentz, Betty Jean Larson, regarding Plaintiffs' notification of requirement they appear at 11 a.m. to be in Court. |

| 4/22/2019 | Ramirez, Mauro | 12.8 | $ 5,059.20 | Prepare for and attend trial, including review of documents and information, provide input regarding strategic decisions, and continue research and review of case law regarding various legal issues. |
| 4/22/2019 | Valderrama, Teresa S. | 12 | $ 5,556.00 | Early morning preparations pre-trial.  To federal courthouse to represent client in trial, including cross examination of Sherry Shelby continued, return to office post-trial.  Evening preparations for following day's trial including work on cross examination of R. Hale. |
| 4/23/2019 | Ramirez, Mauro | 12.1 | $ 4,782.53 | Prepare for and attend trial, including review of documents and information, provide input regarding strategic decisions, and continue research and review of case law regarding various legal issues. |
| 4/23/2019 | Valderrama, Teresa S. | 11 | $ 5,093.00 | Pre-trial preparations.  To courthouse to represent client during trial, including cross examination of Sherry Shelby, cross examination of Dawn Eastridge. |
| 4/24/2019 | Ramirez, Mauro | 12.3 | $ 4,861.58 | Prepare for and attend trial, including review of documents and information, provide input regarding strategic decisions, and continue research and review of case law regarding various legal issues. |
| 4/24/2019 | Valderrama, Teresa S. | 12 | $ 5,556.00 | Pre-trial preparations.  To courthouse to represent client during trial, including cross examination of Alex Kakhnovets, Betty Jean Larson, and return to office.  Continue preparations for trial including work on John Rentz direct and exhibits, amend trial plan to adapt to case presentation to date. |
| 4/25/2019 | Ramirez, Mauro | 14.5 | $ 5,731.13 | Prepare for and attend trial, including review of documents and information, cross-examine Lauren Hafner, provide input regarding strategic decisions regarding trial issues, continue research and review of case law regarding various legal issues. |
| 4/25/2019 | Valderrama, Teresa S. | 14 | $ 6,482.00 | Pre-trial preparations.  To courthouse to represent client during trial, including examination of Alex Kakhnovets, Lauren Hafner, completion of Plaintiffs' case in chief.  Defendant begins defense with John Rentz, and return to office.  Continue preparations for trial including work on  direct examinations and exhibits, adapt case presentation to date. |
| 4/26/2019 | Ramirez, Mauro | 11.5 | $ 4,545.38 | Prepare for and attend trial, including review of documents and information, provide input regarding strategic decisions and assistance regarding the cross-examination of Rodney Hale, and continue research and review of case law regarding various legalissues. |
| 4/26/2019 | Valderrama, Teresa S. | 9.8 | $ 4,537.40 | Pre-trial preparations.  To courthouse to represent client during trial, including examination of Rodney Hale, and return to office. |
| | Subtotal: | 188.5 | $ 81,435.45 | |

**Fees during Trial (Day 8), defending against 70/60 model disclosed by Plaintiffs.**

| Date | Timekeeper | Hrs | Amount | Narrative |
|---|---|---|---|---|
| 5/2/2019 | Valderrama, Teresa S. | 0.2 | $ 92.60 | Receive, review notice from A. Rivera of new, earlier setting dates to resume Shelby trial. |
| 5/2/2019 | Valderrama, Teresa S. | 0.3 | $ 138.90 | Multiple email communications with A. Rivera regarding trial setting dates available, conflicts, and positions taken on resumption of trial by R. Wills. |
| 5/3/2019 | Valderrama, Teresa S. | 0.1 | $ 46.30 | Additional communications with A. Rivera regarding status of trial setting. |
| 5/3/2019 | Valderrama, Teresa S. | 0.1 | $ 46.30 | Receive, review final notice setting resumption of trial at 1 pm on the 15th, and notification of trial team. |
| 5/7/2019 | Ramirez, Mauro | 2.1 | $ 830.03 | Review portions of trial transcript (rough) in preparation for completion of trial and proposed findings of fact and conclusions of law. |
| 5/8/2019 | Ramirez, Mauro | 1.1 | $ 434.78 | Review portions of trial transcript (rough) in preparation for completion of trial and proposed findings of fact and conclusions of law. |
| 5/10/2019 | Ramirez, Mauro | 4.1 | $ 1,620.53 | Review trial transcript (rough) and conduct research in preparation for proposed findings of fact and conclusions of law and closing argument. |
| 5/11/2019 | Valderrama, Teresa S. | 2.8 | $ 1,296.40 | Review trial transcript (rough) and research/case summaries for purposes of trial strategy, focusing on closing arguments and post-trial filings. |
| 5/12/2019 | Valderrama, Teresa S. | 4.2 | $ 1,944.60 | Continue review trial transcript (rough) to prepare for trial continuation on Wednesday this week, evaluating record and witness selection. |
| 5/13/2019 | Valderrama, Teresa S. | 9.2 | $ 4,259.60 | Prepare for trial continuation including evaluation of witnesses to be called, assessment of proof and state of record as to same, work on responding to damages model, evaluation of potential witnesses to be called by Plaintiff in rebuttal and preparations for same. Release of subpoena as to witnesses other than Rodney Hale and communications with opposing counsel regarding same, outline issues for Kellie Bunyi with M. Ramirez, outline issues for Alex Kakhnovets and sponsorship of summary document, outline potential recall issues relating to Betty Jean Larson and preparations for same, notifications to 24-hour fitness witness of timing for appearance.  Work on supplemental cross examination of Rodney Hale, anticipating efforts to rehabilitate.  Work on theories for closing theme. |

| 5/14/2019 | Valderrama, Teresa S. | 10.8 | $ 5,000.40 | Continue trial preparations relating to witnesses, appearances, strategies, themes, arguments for closing and particularly the issue of Kellie Bunyi as trial witness on narrow issues.  Work on cross examinations, and anticipated additional witnesses. Work on direct for 24-hour fitness witness.  Work with M Ramirez on locating authorities to be wrapped into closing. |
|---|---|---|---|---|
| 5/15/2019 | Ramirez, Mauro | 9.3 | $ 3,675.83 | Prepare to resume trial, including final preparation with Kellie Bunyi for testimony and cross examination; attend remainder of trial and provide assistance and strategic advice on witnesses and closing; and consider and analyze final witnesses and testimony in preparation for proposed findings of fact and conclusions of law. |
| 5/15/2019 | Valderrama, Teresa S. | 6 | $ 2,778.00 | Continue trial preparations relating to witnesses, appearances, strategies, themes, arguments for closing.  Meet with Alex Kakhnovets prior to trial to review demonstrative and scope of questions.  Assure exhibits finalized, ready for final days of trial, particularly as to Rodney Hale as resuming the witness stand. |
| 5/15/2019 | Valderrama, Teresa S. | 5 | $ 2,315.00 | Final day of trial.  To courthouse for final witnesses.  Prepare for, present closing arguments. Return to office. |
| | Subtotal: | 55.3 | $ 24,479.25 | |

**Fees incurred Post-Trial, preparing findings of fact/conclusions of law related to 70/60 model.**

| Date | Timekeeper | Hrs | Amount | Narrative |
|---|---|---|---|---|
| 5/16/2019 | Valderrama, Teresa S. | 2 | $ 926.00 | Work on approach, theme, for finding of facts and conclusions of law, including process of sequestering facts, legal points, for inclusion. Work with M. Ramirez on same. |
| 5/21/2019 | Ramirez, Mauro | 2.5 | $ 988.13 | Review rough draft of transcript in preparation of proposed findings of fact and conclusions of law. |
| 5/22/2019 | Ramirez, Mauro | 1.1 | $ 434.78 | Review rough draft of transcript in preparation of proposed findings of fact and conclusions of law. |
| 5/23/2019 | Ramirez, Mauro | 3.6 | $ 1,422.90 | Review rough draft of transcript and conduct research to prepare proposed findings of fact and conclusions of law. |
| 5/24/2019 | Ramirez, Mauro | 3.2 | $ 1,264.80 | Review rough draft of transcript and conduct research to prepare proposed findings of fact and conclusions of law. |
| 5/31/2019 | Ramirez, Mauro | 3.1 | $ 1,225.28 | Review rough draft transcript and exhibits, conduct research and draft proposed findings of fact and conclusions of law. |
| 6/4/2019 | Ramirez, Mauro | 4.1 | $ 1,620.53 | Research and draft proposed finding of fact and conclusions of law. |
| 6/5/2019 | Ramirez, Mauro | 2.8 | $ 1,106.70 | Research and draft findings of fact and conclusions of law. |
| 6/7/2019 | Ramirez, Mauro | 1.3 | $ 513.83 | Research and draft proposed finding of fact and conclusions of law. |
| 6/10/2019 | Ramirez, Mauro | 1.2 | $ 474.30 | Draft and research proposed findings of fact and conclusions of law; consult with T. Valderrama on strategy, structure, objectives. |
| 6/12/2019 | Ramirez, Mauro | 7.4 | $ 2,924.85 | Draft and research proposed findings of fact and conclusions of law related to Sherry Shelby's allegations regarding her time records and hours worked. |
| 6/20/2019 | Ramirez, Mauro | 1.8 | $ 711.45 | Review and analyze final trial transcript in order to collect testimony helpful in support of Findings of Fact and Conclusions of Law. Confer with T. Valderrama regarding strategy, objectives, structure. |
| 6/21/2019 | Ramirez, Mauro | 4.1 | $ 1,620.53 | Review and analyze final trial transcript in order to collect testimony helpful in support of Findings of Fact and Conclusions of Law. |
| 6/24/2019 | Ramirez, Mauro | 6.4 | $ 2,529.60 | Review and analyze final trial transcript in order to collect testimony helpful in support of Findings of Fact and Conclusions of Law. |
| 6/25/2019 | Ramirez, Mauro | 4.9 | $ 1,936.73 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis and review of transcripts and case law. |
| 6/26/2019 | Ramirez, Mauro | 10.8 | $ 4,268.70 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis and review of transcripts and case law. Extended review with T. Valderrama regarding presentation of issues and structure. |
| 6/27/2019 | Ramirez, Mauro | 7.3 | $ 2,885.33 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis and review of transcripts and case law. |

| 6/28/2019 | Ramirez, Mauro | 6.1 | $ 2,411.03 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis and review of transcripts and case law. |
|---|---|---|---|---|
| 6/29/2019 | Ramirez, Mauro | 3.3 | $ 1,304.33 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis and review of transcripts and case law.  Meet with T. Valderrama in connection with same. |
| 7/1/2019 | Ramirez, Mauro | 8.4 | $ 3,320.10 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis of transcript and case law. |
| 7/2/2019 | Ramirez, Mauro | 9.3 | $ 3,675.83 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis of transcript and case law. |
| 7/3/2019 | Ramirez, Mauro | 4.7 | $ 1,857.68 | Draft Proposed Findings of Fact and Conclusions of Law based on analysis of transcript and case law. |
| 7/5/2019 | Valderrama, Teresa S. | 6.5 | $ 3,009.50 | Analyze, consider revisions to draft findings and conclusions (70+ pages), initially with facts and structuring of arguments. |
| 7/6/2019 | Valderrama, Teresa S. | 5.5 | $ 2,546.50 | Continue work on revising findings and conclusions, including consideration of strategy for motion to dismiss in connection with same. |
| 7/7/2019 | Valderrama, Teresa S. | 7 | $ 3,241.00 | Continue revising draft findings and conclusions (70+ pages), including facts and structuring of arguments. Consult trial transcript for testimony in support of modified fact sections. |
| 7/8/2019 | Valderrama, Teresa S. | 9.2 | $ 4,259.60 | Continue revising draft findings and conclusions (75+ pages), including consulting transcript from 8-day trial to confirm or identify supporting testimony in support of modified fact and mixed fact and law sections. |
| 7/9/2019 | Ramirez, Mauro | 1.9 | $ 750.98 | Review and revise portions of Proposed Findings of Fact and Conclusions of Law in connection with strategy positions. |
| 7/9/2019 | Valderrama, Teresa S. | 5.2 | $ 2,407.60 | Continue revising draft findings and conclusions (75+ pages). Continue incorporation of transcript references from 8-day trial to confirm or identify supporting testimony. Focus on procedural section for support of argument concerning discovery misconduct. |
| 7/9/2019 | Valderrama, Teresa S. | 0.5 | $ 231.50 | Work with M. Ramirez on various sections of fact and law conclusions, for restructuring and supplementation of positions taken. |
| 7/11/2019 | Ramirez, Mauro | 0.5 | $ 197.63 | Consider strategy and issues related to revision of Proposed Findings of Fact and Conclusions of Law. |
| 7/15/2019 | Valderrama, Teresa S. | 5.7 | $ 2,639.10 | Work on revising draft findings and conclusions.  Continue assimilation of transcript citations and exhibit citations into revised document. Review exhibits consisting of deposition testimony of Sherry Shelby and Rodney Hale in connection with same. |
| 7/15/2019 | Valderrama, Teresa S. | 1 | $ 463.00 | Work with M. Ramirez on strategy and outline for motion for judgment to be filed in connection with findings and conclusions. |
| 7/16/2019 | Ramirez, Mauro | 11.2 | $ 4,426.80 | Review and revise Proposed Findings of Fact and Conclusions of Law and implement recommendations and changes and incorporate supplemental information from trial transcript and exhibits. |

| 7/16/2019 | Valderrama, Teresa S. | 7.3 | $ 3,379.90 | Continue work of revising draft findings and conclusions. Continue review and incorporation of transcript citations and exhibit citations into revised document. Continue review of Plaintiffs' exhibits consisting of email evidence, and various of defense exhibits, for incorporation into findings and conclusions. |
| 7/17/2019 | Ramirez, Mauro | 8.3 | $ 3,280.58 | Prepare Motion for Entry of Judgment and review and revise Proposed Findings of Fact and Conclusions of Law and implement recommendations and changes and incorporate information from trial transcript and exhibits. |
| 7/17/2019 | Valderrama, Teresa S. | 12.2 | $ 5,648.60 | Working on findings and conclusions for filing. |
| 7/18/2019 | Ramirez, Mauro | 5.4 | $ 2,134.35 | Prepare Motion for Entry of Judgment and review and revise Proposed Findings of Fact and Conclusions of Law and implement changes and incorporate information from trial transcript and exhibits. |
| 7/18/2019 | Valderrama, Teresa S. | 10.8 | $ 5,000.40 | Revise, finalize, file findings and conclusions in behalf of Boxer Property |
| | Subtotal: | 197.6 | $ 83,040.38 | |

| **Fees incurred Post-Trial, preparing Motion to Dismiss based on modified model.** |
|---|---|---|---|---|
| **Date** | **Timekeeper** | **Hrs** | **Amount** | **Narrative** |
| 7/19/2019 | Valderrama, Teresa S. | 1.2 | $ 555.60 | Review, analyze Shelby's findings and conclusions filed yesterday, including review of record for Exhibit A attached to same as new damages model.  Review motion to dismiss authorities in consideration of filing of new motion to dismiss based on completely new damages model submitted after close of evidence. |
| 7/19/2019 | Ramirez, Mauro | 0.7 | $ 276.68 | Review and analyze information presented in Plaintiffs' proposed findings of fact and law and consider motion to dismiss based on revised damages computation. |
| 8/1/2019 | Ramirez, Mauro | 2.8 | $ 1,106.70 | Confer with T. Valderrama regarding motion to dismiss.  Research and draft Motion to Dismiss based on new damages computations and theory submitted by Plaintiffs with their Findings of Fact and Conclusions of Law. |
| 8/2/2019 | Ramirez, Mauro | 4.3 | $ 1,699.58 | Research and draft Motion to Dismiss related to undisclosed damages theory. |
| 8/5/2019 | Ramirez, Mauro | 2.6 | $ 1,027.65 | Research issues related to late disclosure and post-trial new damages theory and prepare motion to dismiss.  Consult with T. Valderrama. |
| 8/6/2019 | Ramirez, Mauro | 2.3 | $ 909.08 | Research issues related to late disclosure and post-trial new damages theory and prepare motion to dismiss.  Work with T. Valderrama on analysis and approach. |
| 8/6/2019 | Valderrama, Teresa S. | 0.5 | $ 231.50 | Work with M. Ramirez on motion to dismiss based on Rule 37, noncompliance with disclosure obligations under Rule 26, and as abuse of case management and Court process following eight-day trial on matter. |
| 8/7/2019 | Ramirez, Mauro | 3.9 | $ 1,541.48 | Research case law in support of Motion to Dismiss and draft arguments related to modified damages theory. |
| 8/8/2019 | Ramirez, Mauro | 2.4 | $ 948.60 | Research case law and continue work on draft Motion to Dismiss; consider strategy for case going forward. |
| 8/8/2019 | Valderrama, Teresa S. | 2.9 | $ 1,342.70 | Revise arguments, factual presentation, of draft Motion to Dismiss. |
| 8/8/2019 | Valderrama, Teresa S. | 3.2 | $ 1,481.60 | Complete revisions to draft Motion to Dismiss, incorporating argument and supplemental analysis; finalize draft Motion to Dismiss, review exhibits, prepare for, approve, and complete for filing. |
| 8/29/2019 | Ramirez, Mauro | 0.9 | $ 355.73 | Review and analyze Plaintiffs' Response to Motion to Dismiss, and consider arguments for Reply. |
| 8/29/2019 | Valderrama, Teresa S. | 0.8 | $ 370.40 | Receive, examine, analyze Shelby's response opposing Motion to Dismiss, and consider strategies for reply. |
| 8/29/2019 | Valderrama, Teresa S. | 0.5 | $ 231.50 | Work with M. Ramirez on outline of strategic, short reply briefing to highlight deficiencies in Response. |
| 8/30/2019 | Ramirez, Mauro | 2.7 | $ 1,067.18 | Prepare draft Reply in Support of Motion to Dismiss, briefing arguments. |

| 9/3/2019 | Ramirez, Mauro | 4.2 | $ 1,660.05 | Research Plaintiffs' cited authorities, rebuttal authorities, and begin draft Reply in Support of Motion to Dismiss under Rule 37. |
|---|---|---|---|---|
| 9/4/2019 | Ramirez, Mauro | 3.3 | $ 1,304.33 | Continue research and drafting of Reply in Support of Motion to Dismiss. |
| 9/4/2019 | Valderrama, Teresa S. | 2.7 | $ 1,250.10 | Examine cases cited in plaintiffs' Response Opposing Motion to Dismiss, and cases cited in draft reply briefing. Preliminary revisions to draft to highlight misconduct. |
| 9/5/2019 | Valderrama, Teresa S. | 8.3 | $ 3,842.90 | Revise draft reply to motion to dismiss, inserting additional argument and section highlighting deficiencies of Plaintffs' response, impact of failure of explanation or defense on motion prosecution, deception of method of introducing new damages model, and finalize and file same. |
| | Subtotal: | 50.2 | $ 21,203.33 | |

14

| **Fees incurred Post-Trial, responding to Plaintiffs' Motion for Reconsideration on Court's findings related to Rule 26 violations.** | | | | |
|---|---|---|---|---|
| **Date** | **Timekeeper** | **Hrs** | **Amount** | **Narrative** |
| 10/14/2019 | Ramirez, Mauro | 0.7 | $ 276.68 | Review and analyze Plaintiff's Motion for Reconsideration. |
| 10/14/2019 | Valderrama, Teresa S. | 1.3 | $ 601.90 | Receive, review Plaintiffs' Motion for Reconsideration on Court's order granting motion to dismiss. |
| 10/14/2019 | Valderrama, Teresa S. | 0.4 | $ 185.20 | Consult with M. Ramirez regarding options for handling Plaintiffs' Motion for Reconsideration of Court's dismissal order, and discussion of applicable rules. |
| 10/16/2019 | Ramirez, Mauro | 1.5 | $ 592.88 | Review Motion for Reconsideration and evaluate response positions and arguments. |
| 10/21/2019 | Ramirez, Mauro | 2.1 | $ 830.03 | Research and draft Opposition to Motion for Reconsideration. |
| 10/22/2019 | Ramirez, Mauro | 2.5 | $ 988.13 | Research and draft Opposition to Motion for Reconsideration. |
| 10/24/2019 | Ramirez, Mauro | 5.5 | $ 2,173.88 | Research and draft Opposition to Motion for Reconsideration. |
| 10/26/2019 | Ramirez, Mauro | 2.6 | $ 1,027.65 | Research and draft Opposition to Motion for Reconsideration. |
| 10/28/2019 | Ramirez, Mauro | 4.5 | $ 1,778.63 | Research and draft Opposition to Motion for Reconsideration, including drafting comprehensive background based on trial testimony and research on appropriate standards. |
| 10/30/2019 | Ramirez, Mauro | 5.4 | $ 2,134.35 | Research and draft Opposition to Motion for Reconsideration, including drafting comprehensive background based on trial testimony and research on appropriate standards. |
| 10/31/2019 | Ramirez, Mauro | 4.6 | $ 1,818.15 | Research and draft Opposition to Motion for Reconsideration, including drafting comprehensive background based on trial testimony and research on appropriate standards and prepare arguments in support of Court's analysis. |
| 11/2/2019 | Valderrama, Teresa S. | 2.2 | $ 1,018.60 | Review authorities cited by Shelby Motion for Reconsideration and pertinent record citations, to evaluate draft response. |
| 11/4/2019 | Valderrama, Teresa S. | 0.8 | $ 370.40 | Research supplemental case citations for opposition to motion for reconsideration. |
| 11/4/2019 | Valderrama, Teresa S. | 0.5 | $ 231.50 | Consult with M. Ramirez on strategy regarding Shelby pending Motion for Reconsideration. |
| 11/4/2019 | Valderrama, Teresa S. | 9.2 | $ 4,259.60 | Review, revise, finalize, file Response in Opposition to Shelby Motion for Reconsideration. |
| | Subtotal: | 43.8 | $ 18,287.55 | |

| | | |
|---|---|---|
| GRAND TOTAL: | 786.5 | $335,674.18 |